# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Mary Holly,  Case No. 3:16CV00009

    Plaintiff,

    v.  **ORDER**

Walmart Real Estate Business
Trust, *et al.*,

    Defendants.

This is a slip and fall case. At about 6:30 A.M. on June 24, 2014, plaintiff Mary Holly slipped and fell on spilled blueberries at defendant Walmart's Lima, Ohio Supercenter, injuring her left shoulder.

Plaintiff sued defendant, claiming defendant breached its duty to exercise ordinary and reasonable care in maintaining the premises in a reasonably safe condition.

Jurisdiction is proper under 28 U.S.C. § 1332.

Defendant now moves for summary judgment. (Doc. 20).

For the reasons that follow, I deny the motion.

## Background

### A. Defendant's Spill Clean Up Procedures and Policies

Defendant instructs its employees on proper spill clean up safety, providing specific, step-by-step procedures and general policies for cleaning up spills. Angie Rex, defendant's employee who

addressed the spilled blueberries at issue in this case, received these instructions and knew defendant's procedures and policies.

According to defendant's "Spill Clean Up Procedures," the first step is for the employee to determine the type of spill. Specifically, the policy states, "First, block off the spill area/aisle [*i.e.*, with caution cones] or have an associate protect the spill area to prevent a customer or another associate from coming in contact with the spill or tracking it through the store." (Doc. 21, Ex. 13).

Next, defendant instructs its employees to retrieve the necessary clean up supplies from the spill station.

Then, the final step is for the employee to clean up the spill. When doing so, the employee must, "Place a caution cone next to the spill to prevent any customer and cart traffic from tracking through the spilled material." (*Id.*).

In addition to the written "Spill Clean Up Procedures," defendant's safety training materials include general policies for cleaning spills. These policies provide clear instructions for the scenario where an employee cannot address a hazard or spill on his or her own.

Specifically, defendant's safety training materials instruct employees:

Correct hazards as soon as possible. If you need help, guard the area, and ask another associate to assist in correcting the problem. Remember to use caution cones to warn associates, customers and members of slippery floors.

If you encounter a spill and need assistance, guard the area and ask another Associate for help.

Use caution cones to warn associates, customers and members of slippery floors, but do not leave the spill unattended.

(*Id.*, Ex. 14).

Defendant's safety training materials also state:

2

> It is important that spills are marked to alert customers, members and associates of the potential hazard. When you see a spill, clean it up as soon as possible. If the spill is too large for you to clean, stand by it until another associate can get a caution cone and the proper supplies needed to clean it up. Never leave a spill or hazard unattended.
>
> When you see a spill: Clean it up as soon as possible–OR–Remain by the spill until another associate can assist you with the cleanup. Never leave a spill or hazard unattended. Spills must be marked.

(*Id.*, Ex. 15).

### B. Defendant Employee Angie Rex's Attempt to Clean the Spilled Blueberries and Plaintiff's Fall

Shortly before plaintiff's fall, another customer told Ms. Rex that she had spilled blueberries and showed her the location of the spill.

Contrary to defendant's spill clean up procedures and policies outlined above, when Ms. Rex saw the spill area, she left the area unattended and went to retrieve a broom and dustpan. Before doing so, Ms. Rex did not ask another employee to guard the spill area, nor did she place caution cones around the spill area.[1]

As Ms. Rex was underway with cleaning one part of the spill area, plaintiff slipped and fell on one or more blueberries in another, unguarded part of the spill area. Ms. Rex saw plaintiff's leg on the ground and went to help her. According to plaintiff, Ms. Rex appeared less than five seconds after she fell.

After Ms. Rex cleaned up all the blueberries, including those on which plaintiff fell, she (or another employee) placed caution cones in the area surrounding the spill area. According to Ms. Rex,

---

[1] Defendant suggests that having another employee protect the area was not an option, given the presence of only a few other employees at that early hour. There is no indication that Ms. Rex tried to call out to have someone come to the produce area to assist her. Nor does the record indicate why she did not first obtain and set out caution cones before beginning to clean the spill.

she did not look for blueberries in the exact area where plaintiff fell, indicating she "wanted to get that big section swept up first" before looking to see whether any blueberries were elsewhere. (Doc. 21 at 4). Ms. Rex also testified she "had swept the floor and had not got them (blueberries) all yet. [Plaintiff] found the only one I had not swept up yet." (*Id.*).

As a result of the fall, plaintiff injured her left shoulder, requiring surgery. Plaintiff continues to experience problems with her left shoulder and claims the injury significantly affects her daily life.

**Standard of Review**

Summary judgment is appropriate under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323. Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

I accept the non-movant's evidence as true and construe all evidence in its favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

**Discussion**

**A. Defendant's Duty Owed to Invitees**

Plaintiff's claim amounts to an allegation that defendant "negligently failed to keep the floor of its store in a safe condition which caused [plaintiff] to fall and sustain serious injuries." *Flowers v. Penn Traffic Co.*, 2001 WL 921427, *1 (Ohio App.). Plaintiff must, therefore, show that: 1)

defendant owed plaintiff a duty of care; 2) defendant breached that duty; and 3) the breach proximately caused plaintiff's injuries.

In Ohio, plaintiff's status on defendant's premises determines the scope of the legal duty owed. *Shump v. First Cont'l-Robinwood Assocs*, 71 Ohio St.3d 414, 417 (1994).

Neither party disputes that plaintiff was a business invitee. As such, defendant owed plaintiff a duty to exercise ordinary or reasonable care in maintaining its premises in a reasonably safe condition "so that its customers are not unnecessarily and unreasonably exposed to danger." *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 203 (1985); *see also Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 80 (2003) ("A shopkeeper ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers.").

Defendant's responsibilities, however, do not extend so far that it serves as "an insurer of the customer's safety." *Paschal, supra,* 18 Ohio St.3d at 203. Defendant owes no duty to warn invitees of open and obvious conditions. *Id.*; *Armstrong*, *supra,* 99 Ohio St.3d at 82. If a condition is so obvious that it serves as its own warning, business owners have no duty. *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644 (1992) (citing *Sidle v. Humphrey*, 13 Ohio St.2d 45 (1968) and *Paschal, supra,* 18 Ohio St.3d 203).

Under Ohio law, for a business invitee to recover for an injury caused by a hazard on defendant's premises, the plaintiff must show:

> 1. That the defendant through its officers or employees was responsible for the hazard complained of; or
>
> 2. That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or

3. That such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care.

*Johnson v. Wagner Provision Co.*, 141 Ohio St. 584, 589 (1943).

Here, defendant did not breach the duty of ordinary care by creating a hazardous condition (*i.e.,* by spilling the blueberries) that caused plaintiff's fall. Thus, plaintiff needs to show defendant possessed either actual or constructive knowledge of the hazardous condition, and defendant breached the duty to warn plaintiff of or promptly remove that hazardous condition.

Defendant argues no genuine issues of material fact remain as to: 1) its notice of the blueberries that caused plaintiff to slip and as to the reasonableness of its employee's efforts to clean up the blueberries; and 2) whether the blueberries were an open and obvious condition.

I disagree and hold that genuine issues of material fact remain as to whether defendant breached the duty of ordinary care by failing to warn plaintiff of or otherwise protect her from the hazardous condition or promptly remove it and as to whether the blueberries were an open and obvious condition.[2]

---

[2] Defendant's contention that it did not have actual notice of the spilled blueberries approaches the absurd: defendant, through its employee, indisputably knew about the spill from another customer, who also pointed out its location. What Ms. Rex saw put her on actual notice that there were spilled blueberries in the area, creating a risk of injury to anyone who might pass through the area.
  Even if the customer did not know of or call Ms. Rex's attention to the specific part of the area where plaintiff fell, Ms. Rex's first job, as noted above in defendant's "Spill Clean Up Procedures," was to find out where else the blueberries might have rolled (*i.e.,* determine the type of spill). Though she failed to do so, she was, nonetheless, on constructive notice that the small, round blueberries might be in a wider area than that where she initially saw them.

## B. Genuine Issues of Material Fact Remain

### 1. Whether Defendant Satisfied Its Duty to Exercise
### Ordinary or Reasonable Care in Maintaining
### Its Premises in a Reasonably Safe Condition

Defendant is correct that a defendant's own procedures and policies do not *ipso facto* create the standard of care and, relatedly, that a defendant's failure to comply with its own procedures and policies does not, standing alone, establish breach. *Mackey v. Kroger Co.*, 1994 WL 456468, *2 (Ohio App.) ("Although policy guidelines are a valuable means by which a store may avoid negligence, failure to strictly follow such guidelines should not be confused with mandates from a legislative body.").

However, defendant's failure, through its employee, Ms. Rex, to comply with its own procedures and policies is evidence a jury may consider in determining whether defendant breached the duty owed to plaintiff. That defendant's own procedures and policies do not establish the standard of care does not preclude a jury from considering those procedures and policies, as well as defendant's failure to adhere to them. Defendant's non-compliance with its own procedures and policies when addressing the spill at issue in this case is "a factor to be considered by the trier of fact in determining whether or not ordinary care was satisfied." *Id.*

Defendant's "Spill Clean Up Procedures" expressly state that after discovering a spill or hazard, an employee's first step is to determine the type of spill; this includes blocking off the spill area/aisle or having another associate protect the spill area/aisle.

Additionally, it is clear from defendant's general spill clean up policies that: 1) an employee should never leave a spill or hazard unattended; 2) if an employee cannot clean up the spill or hazard

7

on his or her own, he or she should ask another associate for assistance; and 3) spills or hazards must be marked, specifically by placing caution cones around the spill or hazard area.

Ms. Rex failed to follow these instructions when responding to the hazard that the spilled blueberries clearly created and that caused plaintiff's fall and injuries.

First, Ms. Rex disregarded the first step of defendant's "Spill Clean Up Procedures"–she did not determine the type and area of the spill. After the customer told her about the spill and showed her its location, Ms. Rex made no attempt to determine the extent of the spill. A reasonably prudent employee would realize that what he or she saw initially may not encompass all of the spilled blueberries.

Ms. Rex further disregarded that first step by failing to block off the spill area/aisle or have another employee protect the spill area/aisle to prevent another customer–like plaintiff–from coming in contact with the spill. Ms. Rex did not remain in the spill area to warn any customers who may have approached it of the danger, and she did not ask another associate to protect the area while she went to retrieve the cleaning supplies.

Additionally, Ms. Rex failed to comply with defendant's clear policy that employees should never leave a spill area unattended or unguarded. This policy is reiterated numerous times in defendant's safety training materials–for example: "Use caution cones to warn associates, customers and members of slippery floors, but do not leave the spill unattended"; "Never leave a spill or hazard unattended." (Doc. 21, Ex. 14, Ex. 15). Instead of asking someone to help her, Ms. Rex left the spill area–not knowing the full extent of the spill/hazard–to get the cleaning supplies.

Undoubtedly, Ms. Rex responded promptly, doing what she subjectively thought was best. However, a jury could find that she overlooked preliminary steps that she reasonably could and

should have taken to minimize the risk of injury. And a jury also could conclude that her failure to take those steps–learning the extent of the spill, blocking off the spill area with caution cones, and waiting until another employee could assist until she cleaned up the blueberries–put plaintiff at a foreseeable risk of injury.

Thus, while I agree with defendant that non-compliance with its own procedures and policies is not, itself, conclusive proof of breach, the simple fact is that those procedures and policies embody commonsense, reasonable steps to protect customers from risk of injury. At a minimum, the existence of those sensible protocols shows that defendant and its employees, including Ms. Rex, well know what needs to be done in circumstances such as those that existed here, and a jury may appropriately consider Ms. Rex's non-compliance with those procedures and policies as evidence of breach.

I also agree with defendant that the basic facts are not in dispute; however, what matters here are the inferences that a rational jury could draw, and those rational inferences could result in a finding for the plaintiff.

A genuine issue of material fact exists as to whether defendant breached its duty. Thus, this an issue for the jury to decide.

Therefore, defendant is not entitled to summary judgment.

### 2. Whether the Blueberries Were an Open and Obvious Condition

In the alternative, defendant argues no genuine issue of material fact remains as to whether the blueberries were an open and obvious condition, relieving defendant of any duty of care. To

support its argument, defendant relies on plaintiff's *post hoc* statement that while she did not see the blueberries before she fell, they were observable after the fall.

Plaintiff responds that the blueberries were not open and obvious because her shopping cart obstructed her view of the floor, and her vision was focused on her destination–the meat bunker directly in front of her.

Plaintiff's statement after the fall that the blueberries were observable does not conclusively prove that the blueberries on the floor were open and obvious. Ohio courts hold that people are not required to constantly look downward while walking to avoid injury. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 680 (1998). "This rule is especially apt in a location where goods are displayed in a manner intended to call them to a customer's attention and cause them to select items for purchase." *Destazio v. Flying J., Inc.*, 2006 WL 226022, *2 (N.D. Ohio) (citing *Carpenter v. Glassman, Inc.*, 124 Ohio App. 3d 236, 240 (1997)).[3]

The fact that plaintiff stated the blueberries were observable is not so compelling that reasonable minds could reach but one conclusion as to whether the blueberries were, in fact, open and obvious. Thus, whether the blueberries were an open and obvious condition is an issue for the jury.

Therefore, defendant is not entitled to summary judgment.

## Conclusion

Because a genuine issue of material fact remains as to whether defendant breached the duty of ordinary care by failing to warn plaintiff of or promptly remove the hazardous condition and as

---

[3] I also note that Ms. Rex testified plaintiff found the one blueberry she had missed. If so, the likelihood that even the most percipient and attentive customer could have seen it is hardly likely.

to whether the hazardous condition was open and obvious, defendant is not entitled to summary judgment.

It is, therefore,

ORDERED THAT: defendant's motion for summary judgment (Doc. 20) be, and the same hereby is, denied.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge